IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

NEAL A. POTTS,

    Plaintiff,

      v.                    CIVIL NO.: WDQ-13-1986

BRYAN H. POTTS, *et al.*,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Neal A. Potts ("Neal") sued Bryan H. Potts ("Bryan"),

Phillip L. Potts ("Phillip"), and Diane W. Potts ("Diane"),

(collectively, the "defendants") for breach of trust and other

state law claims.[1]  ECF No. 32-2.  Pending are the defendants'

motion to dismiss for lack of jurisdiction and failure to state

a claim, ECF No. 24, and Neal's motions for leave to amend the

complaint, ECF No. 32, and to file a surreply, ECF No. 40.[2]  No

hearing is necessary.  Local Rule 105.6 (D. Md. 2011).  For the

following reasons, the motion for leave to amend will be

---

[1] Neal also sued Alicia Potts--Bryan's wife--and Eleanor J.
Lipsitz, Esquire--his attorney in his father's probate
proceeding--but has voluntarily dismissed his claims against
them.  ECF Nos. 1 ¶¶ 8-9; 3; 47.

[2] Also pending is Neal's motion to stay consideration of the
defendants' motion to dismiss pending resolution of his motion
for leave to amend.  ECF No. 41.  Because the Court will
consider and resolve all pending motions in this opinion, the
motion to stay will be denied.

granted, the motion to dismiss will be denied as moot, and leave
will be granted to file a surreply.

I.   Background[3]

A. Facts

Neal, Bryan, Phillip, and Andrea Potts ("Andrea") are the
children of the late Frieda Potts ("Frieda") and Bernard Potts
("Bernard").  ECF No. 32-2 ¶ 4.  Diane is Phillip's wife.  *Id.*
¶ 9.  Bryan and Phillip are attorneys and partners in the law
firm Potts & Potts, P.A.  *See id.* ¶¶ 6-7.  Bryan specializes,
*inter alia*, in trusts and estates law.  *See id.* ¶ 6.

During their lifetimes, Frieda and Bernard provided for the
establishment of trusts to benefit equally their four children
(collectively, the "Trusts"),[4] of which Bryan and Phillip serve

_____

[3] The facts are taken from the proposed amended complaint.  ECF
No. 32-2.  For the motion to dismiss for failure to state a
claim, the well-pled allegations in the complaint are accepted
as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th
Cir. 2011).  In reviewing the motion to dismiss, the Court may
consider allegations in the complaint, matters of public record,
and documents attached to the motion to dismiss that are
integral to the complaint and authentic.  *See Philips v. Pitt
Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  For a
motion to dismiss for lack of jurisdiction, the Court may
consider evidence "beyond the pleadings" to determine if subject
matter jurisdiction exists.  *Khoury v. Meserve*, 268 F. Supp. 2d
600, 606 (D. Md. 2003) *aff'd,* 85 F. App'x 960 (4th Cir. 2004).

[4] These trusts include: (1) the Frieda Potts Residuary Trust
("Residuary Trust"); (2) the November 29, 1990 Frieda Potts
Survivorship Insurance Deed of Trust ("Survivorship Trust"); (3)
the November 16, 1993 Revocable Deed of Trust of Bernard Potts
("Revocable Trust"); and (4) the Neal Potts Trust and the Neal

as trustees.  *See id.*  ¶¶ 4, 6-7.  Neal--"a part-time massage

therapist and an unsophisticated beneficiary"--"is entirely

reliant" on his monthly distribution of trust income.  *Id.* ¶ 5.

On April 27, 2000, Frieda died.[5]  *Id.* ¶ 16.  Her will

provided for the creation of the Residuary Trust, which was

funded with the assets of Frieda's estate.  *See id.*  These

assets included, *inter alia*, a half-interest in 3036 Old

Westminster Road in Finksburg, Maryland ("Westminster Property")

and a half-interest in Thankful Acres in Berlin, Maryland

("Thankful Acres").[6]  *See id.*

Bryan and Bernard were appointed co-trustees of the

Residuary Trust.  *See id.* ¶ 17.  In 2005, however, Bryan

"declared his father infirm" and replaced him as co-trustee with

---

Potts Skip Trust ("Neal Trusts").  *See* ECF No. 32-2 ¶¶ 11, 36,
43.

At times, the amended complaint refers alternatively to the
Survivorship Trust and the "1991 Frieda Potts Life Insurance
Trust."  *See id.* ¶¶ 12, 20.  Because it is unclear from the
complaint whether these are separate trusts, the Court will
refer to both as the "Survivorship Trust" for purposes of
resolving these motions.

Finally, the amended complaint also refers to the "Hanah Bayla
Irrevocable Trust," which "controls the assets of business
entities . . . created by [Bernard]."  *See id.* ¶ 10 & n.1.  Neal
has not alleged that he is a beneficiary of this trust.

[5] Bryan served as Personal Representative of Frieda's estate.
ECF No. 32-2 ¶ 6.

[6] Bernard owned the other half of Thankful Acres.  ECF No. 32-2
¶ 16.

Phillip.  *See id*.  Bryan and Phillip then sold Thankful Acres
for $1,100,000 but did not "account for the proceeds and credit
the gain to" Frieda's trusts, Bernard, or Bernard's trusts.  *Id*.
¶ 18.  In 2007, Bryan--acting as Bernard's attorney--sold
Frieda's and Bernard's marital home, which Bernard owned fully
after Frieda's death.  *See id*. ¶¶ 16, 19.  However--like the
proceeds from Thankful Acres--Phillip and Bryan took the
proceeds from the sale of the marital home "for themselves
instead of including it as part of their father's estate and/or
trust" as they were obligated to do.  *See id*. ¶¶ 18, 20.

On November 16, 2007, Bernard died.  *Id*. ¶ 21.  Upon his
death, the Residuary Trust was allocated to the Survivorship
Trust.  *Id*. ¶ 22.  The assets of the Revocable Trust--which
eventually included the assets of Bernard's estate (the
"Estate")--and the Survivorship Trust "were to be divided into
[four] shares equally" between the four Potts children.  *Id*.
¶ 12.  Bryan was required to take his share "outright and free
of trust," but "the trust instruments required the shares for
Phillip, Andrea and Neal to be held and managed in" individual
trusts and skip trusts "for their benefit and their
remaindermen."  *See id*.  Bryan is the trustee of the Revocable
Trust, and Phillip is the trustee of the Neal Trusts.  *See id*.
¶¶ 7, 33.  However, Phillip "expressly . . . abdicated his

4

fiduciary duties" as Neal's Trustee to Bryan,[7] informing Neal by email that he has "nothing to do with the administration of [Neal's] trust—and that is not an accident."  *See id.* ¶¶ 38-39.

The Trust Instruments include "clear mandates . . . designed to protect and grow the corpus through the creation of irrevocable trusts."  *Id.* ¶ 13.  They also "incorporate by reference" the rules for trust administration in "the *Trustees' Powers, Frank. Bernstein, Conaway & Goldman, Recorded Trust Provisions Series* 1998" (the "Trustees' Powers").  *Id.*  The Trustees' Powers prohibit trustees from, *inter alia*, delegating fiduciary duties, self-dealing, personally profiting from money borrowed from the trust, taking trust money for personal use at the beneficiaries' expense, terminating a trust unless the costs of administration outweigh the size of the corpus, and--by the spendthrift provision--taking assets out-of-trust.  *See id.* ¶ 15.  The Trustees' Powers require the trustees to always act in the best interests of the trust and its beneficiaries.  *Id.* ¶ 14.

On November 30, 2007, Bryan--acting as Personal Representative--opened the Estate in the Orphans' Court of

---

[7] Phillip knew that "such abdication was a reckless and fundamental breach of his legal responsibilities" as Neal's trustee.  ECF No. 32-2 ¶ 39.

Baltimore City (the "Orphans' Court").[8]  *Id.* ¶ 23.  In 2009,
Bryan and Phillip executed a "confidential settlement agreement"
with Andrea (the "Secret Settlement").[9]  *See id.* ¶ 25.  Bryan and
Phillip knew "they lacked authority to terminate Andrea's trust"
under the Trusts' terms.  *See id.*  However, through the Secret
Settlement, Andrea took her Estate distribution "free and clear
of trusts" in a cash payment of $1,250,000.  *Id.*  This share was
"considerably larger" than Neal's share, which also violated the
terms of the Trusts and the brothers' fiduciary duties to Neal.
*See id.*  On October 30, 2009, Bryan "filed the Second and Final
Administration Account," which was accepted by the Orphans'
Court, "thereby effectively closing the estate of Bernard
Potts."  *See id.* ¶ 27.

After the closure of the Estate, Bryan and Phillip
"transferred ownership of [seven] of the [eight] trust
properties out-of-trust and to themselves."[10]  *See id.* ¶¶ 29-37.

---

[8] The proceeds from the sales of Thankful Acres and the marital
home were allegedly missing from Bryan's Estate filings in the
Orphans' Court.  *See* ECF No. 32-2 ¶ 24.

[9] Andrea was the only beneficiary to file exceptions to the
Estate administration in the Orphans' Court.  *See* ECF No. 1
¶ 27.

[10] These properties were: (1) 3919 Pulaski Highway in Harford
County, Maryland; (2) 11704 Reisterstown Road in Baltimore
County, Maryland ("Reisterstown Property"); (3) 1004 Beechwood
Avenue in Anne Arundel County, Maryland; (4) the Westminster
Property; (5) 160 New Westminster Road in Carroll County,
Maryland; (6) 721 Liberty Road in Sykesville, Maryland; and (7)

For example, in the "most egregious example[] of self-dealing"
of the seven transactions, Bryan and Phillip pledged the
Reisterstown Property as collateral for a $600,000 promissory
note to Andrea as part of the Secret Settlement. *See id.* ¶ 31.
Then, in November 2009, Bryan transferred the Reisterstown
property to 11704 Reisterstown Road, LLC, which is owned by
himself and Phillip, and borrowed $150,000 against it. *See id.*
In 2012, Bryan and Phillip sold the Reisterstown Property at a
price of more than $1,000,000 from the Estate valuation. *Id.*
"The proceeds of this sale remain unaccounted for and
misappropriated at the expense of Plaintiff and future
beneficiaries."[11]  *Id.*

---

41 Ocean Gate Highway in Worcester County, Maryland. *See* ECF
No. 32-2 ¶¶ 29-37.

The eighth property--378 Gamber Road in Finksburg, Maryland--is
the only real property transferred to the Neal Potts Skip Trust
for Neal's benefit. *See id.* ¶ 36.  The property was sold to a
developer for $650,000. *Id.*  The Skip Trust holds a mortgage on
the property for $572,000, but the developer has missed some
mortgage payments and "there are serious questions about whether
this tract can be developed." *Id.*  Allegedly, unlike Gamber
Road, "none of the trust properties that Defendants transferred
to themselves have the potential to precipitously decline in
value." *Id.*  Also, the "$78,000 difference in the sale price
and the mortgage is unaccounted for." *Id.*

[11] Neal also alleges that Bernard's personal property, such as
coins and jewelry, "comprise the corpus of the Trusts" and
"remain unaccounted for by the Defendants." *See* ECF No. 1-10;
32-2 ¶ 38.  These items are listed on schedules filed in the
Orphans' Court during the Estate administration (the
"Schedule"), which are attached to--and expressly incorporated
in--the amended complaint. *See id.*

On August 17, 2010, Neal requested an accounting of the Trusts. *See id*. ¶ 42. Bryan "falsely . . . told Neal that the trust documents do not require an accounting," but promised to provide Neal with an accounting nonetheless. *See id*. Despite Neal's repeated requests over the next two years, Bryan did not provide Neal with the promised accounting until November 2012. *See id*. ¶¶ 42-43. The document--entitled "SUMMARY OF ACCOUNT Neal Potts Trust U/A 11/29/90 For Period 10/30/2009 Through 11/1/2012" (the "Summary of Account")[12]--did not include an accounting of the Residuary Trust, the Survivorship Trust,[13] or the Revocable Trust. *See id*. ¶¶ 40, 43.

The Summary of Account "for the first time[] indicated to" Neal that Bryan--who is not the Neal Trusts' trustee--"took assets from Plaintiff's trusts for his own personal use and profit at Plaintiff's expense."[14] *See id*. ¶ 46. For example,

---

[12] Neal alleges that the Summary of Account "was in no way an accounting sufficient for [him] to understand and protect his interests as contemplated and required by Maryland law." ECF No. 32-2 ¶ 43. For example, the Summary of Account does not provide a "basis for [Bryan's] commissions." *Id*. ¶ 47.

[13] The Survivorship Trust "was funded with a second-to[-]die life insurance policy on the lives of Frieda and Bernard Potts . . . . Because an accounting has never been provided, Plaintiff is unaware of the amount or whereabouts of the proceeds paid from the policy." ECF No. 32-2 ¶ 49.

[14] In 2012, Bryan and Phillip were reprimanded by the Attorney Grievance commission "for fail[ing] to properly account for and manage property in a fiduciary capacity" due to "insufficient funds in their escrow account." *See* ECF No. 32-2 ¶ 45.

the Summary of Account shows that Bryan took $82,535.66 from Neal's trust assets to purchase a property at 919 South Curley Street in Baltimore, Maryland. *See id.* ¶ 47. He borrowed $107,000 on the property, then sold it for "a personal profit of $132,464.34," the proceeds of which "have never been accounted for or credited to Plaintiff's trusts." *See id.* He also took $18,000 from Neal's trust assets to purchase or improve property located at 2127 Jefferson Street in Baltimore, Maryland. *See id.* He later sold the property at a profit for $30,000 at Neal's expense. *See id.* Also, the Summary of Account lists several unexplained and "unlawful" disbursements including, *inter alia*, two payments to "BMW of Towson,"[15] for which Bryan did not "seek or receive guidance or approval" from Phillip "or other authority."[16] *See id.*

---

[15] Neal also alleges that Bryan and Phillip falsely told Neal that the "Goodlow Condo"--which Neal allegedly owns outright in fee simple following Bernard's death--is trust property. *See* ECF No. 32-2 ¶ 48. Even if the Goodlow Condo is considered trust property, "Defendants failed to ensure that the property was rented and/or leased at certain times," and--when rented--they "denied to Plaintiff his full and rightful income" from the rents. *Id.*

[16] Bryan and Phillip subsequently provided "a newer and just as deficient" accounting, which allegedly fails "to provide even the most basic information concerning each beneficiary's share under the distribution of both parents' trusts" or to include information about "the purpose of the transaction[s], for whose benefit the transaction[s were] made, the terms of the transaction[s] and the resulting profit or loss associated therewith." ECF No. 32-2 ¶¶ 50-51.

B. Procedural History

On July 9, 2013, Neal sued the defendants on the basis of diversity jurisdiction.[17]   ECF No. 1.[18]   The amended complaint asserts seven claims: (1) failure to provide an accounting (Bryan and Phillip); (2) breach of trust (Bryan); (3) breach of trust (Phillip); (4) constructive trust (Bryan and Phillip); (5) conversion (Bryan and Phillip); (6) unjust enrichment (Diane); and (7) removal as trustees (Bryan and Phillip). *See* ECF No. 32-2 at 22-33.

On November 25, 2013, the defendants moved to dismiss the complaint for failure to state a claim and lack of jurisdiction. ECF No. 24.   On January 31, 2014, Neal opposed the motion.   ECF No. 31.   On February 4, 2014, Neal moved for leave to file an amended complaint.   ECF No. 32.   On February 28, 2014, the defendants replied to Neal's opposition to dismissal.   ECF No. 38.   On March 16, 2014, Neal moved for leave to file a surreply. ECF No. 40.

On March 17, 2014, the defendants opposed Neal's motion to amend the complaint.   ECF No. 42.   On April 1, 2014, the defendants responded to Neal's motion to file a surreply.   ECF

---

[17] Neal is a citizen of Arizona, and the defendants are citizens of Maryland.   ECF No. 32-2 ¶¶ 1-2.

[18] The original complaint challenged, *inter alia*, the valuations of Estate assets and the reimbursement of Bryan and Phillip for life insurance premium payments, both of which were approved by the Orphans' Court. *See* ECF Nos. 1 at 33-35, 24-1 at 16.

No. 44. On April 3, 2014, Neal replied to the defendants'
opposition to his motion to amend. ECF No. 46.

## II. Analysis

### A. Surreply

Unless otherwise ordered by the Court, a party may not file
a surreply. Local Rule 105.2(a) (D. Md. 2012). "Surreplies may
be permitted when the moving party would be unable to contest
matters presented to the court for the first time in the
opposing party's reply." *Khoury*, 268 F. Supp. 2d at 605.
Because the defendants have stated that they "do not oppose
Plaintiff's filing of the Proposed Surreply," *see* ECF No. 44 at
3, and portions of the surreply are responsive to new arguments
in the defendants' reply, the Court will grant the motion and
consider the surreply.[19]

---

[19] Although Neal sought leave to amend before the defendants
replied to Neal's opposition to the motion to dismiss, large
portions of the defendants' reply and Neal's surreply discuss
the sufficiency of the original complaint. However, "[i]t is
well settled that an amended pleading supersedes the original
pleading, and that motions directed at superseded pleadings are
to be denied as moot." *Blount v. Carlson Hotels*, 3:11CV452-MOC-
DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011) (*citing
Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)
("The general rule . . . is that an amended pleading supersedes
the original pleading, rendering the original pleading of no
effect.")). Because the Court will grant Neal leave to amend
the complaint, the motion to dismiss will be denied as moot.

B. Legal Standards

1. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that
leave to amend should be freely given when justice requires.
Leave should be denied only when amendment would unduly
prejudice the opposing party, amount to futility, or reward the
movant's bad faith.[20]  *Steinburg v. Chesterfield Cnty. Planning
Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v.
Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).  An
amendment is futile if it would fail to withstand a motion to
dismiss.  *See Perkins v. United States,* 55 F.3d 910, 917 (4th
Cir. 1995).

2. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), an action
may be dismissed for failure to state a claim upon which relief
can be granted.  Rule 12(b)(6) tests the legal sufficiency of a
complaint, but does not "resolve contests surrounding the facts,
the merits of a claim, or the applicability of defenses."
*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.
2006).

The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader

---

[20] The defendants do not assert that Neal seeks leave to amend in
bad faith or that his amendment would prejudice them.

is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

### 3. Motion to Dismiss for Lack of Jurisdiction

Under Federal Rules of Civil Procedure 12(b)(1) and 12(h), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of

proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury*, 268 F. Supp. 2d at 606.  The Court may examine evidence "beyond the pleadings" to decide whether it has subject matter jurisdiction, without converting the proceeding to one for summary judgment, but it must presume that the factual allegations in the complaint are true. *See id.*; *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

    C. Jurisdiction Arguments

        1. Probate Exception

    The defendants contend that Neal's claims are barred by the probate exception, because the "central theme" of the amended complaint "is supposed irregularity in the 2009 administration and distribution of the Bernard Potts Estate."  ECF No. 42 at 8. Neal argues that the amended complaint concerns "matters of trust only," and mere references to the Estate "which funded the Trusts at issue does not invoke the probate exception."  ECF No. 46 at 2.

    Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them,"[21] the "probate exception" is a judicially-created exception to otherwise proper federal court jurisdiction. *See Oliver v.*

---

[21] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976).

*Hines*, 943 F. Supp. 2d 634, 636 (E.D. Va. 2013) (*citing*, *inter*
*alia*, *Marshall v. Marshall,* 547 U.S. 293, 126 S. Ct. 1735, 164
L.Ed.2d 480 (2006)). The probate exception--which is of
"distinctly limited scope"--applies to bar federal jurisdiction
only when: "(i) [cases] seek to probate or annul a will, or
administer a decedent's estate, and (ii) [cases] seek to dispose
of property that is in the custody of the state probate courts."
*Id.* at 637; *Marshall*, 547 U.S. at 310-12. If a case falls
"outside those confines," the probate exception does not bar its
adjudication in federal court. *Marshall*, 547 U.S. at 312.

In their motion to dismiss the original complaint, the
defendants identified several allegations that challenged the
administration of the Estate in the Orphans' Court. *See* ECF No.
24-2 at 11-14. In his amended complaint, Neal has removed those
allegations and instead challenges Bryan's and Phillip's
management of the Trusts and alleged misappropriation of trust
assets. *See, e.g.*, ECF No. 32-2 at 24-28. Neal does not ask
this Court to take jurisdiction over a *res* that is in the
custody of the Orphans' Court;[22] instead he asserts *in personam*

---

[22] *See Marshall*, 547 U.S. at 310-12 (probate exception bars
federal courts from "'interfer[ing] with the probate
proceedings,'" which means that "when one court is exercising *in*
*rem* jurisdiction over a *res,* a second court will not assume *in*
*rem* jurisdiction over the same *res*") (*quoting Markham v. Allen*,
326 U.S. 490, 494, 66 S. Ct. 296, 298, 90 L. Ed. 256 (1946)).
Further, this case does not interfere with any *res* currently
within the jurisdiction of the Orphans' Court, because the

claims for various breaches of the Trusts, conversion, and unjust enrichment. Neal also does not request relief that would require the Court to probate Bernard's will or re-administer Estate assets; instead, he seeks the return of his "rightful share of" property and Trust assets,[23] an accounting, and monetary damages. *See, e.g.*, ECF No. 32-2 at 22-26. Accordingly, Neal's claims do not fall within the probate exception.[24] *See Marshall*, 547 U.S. at 312 (plaintiff's tortious

---

administration of the Estate has concluded. *See Long v. Blair*, 650 F. Supp. 2d 542, 547-49 (S.D.W. Va. 2009) (post-*Marshall*, federal court could adjudicate will contest after probate proceedings concluded, because the state courts of general jurisdiction had authority to resolve will contests and it would not affect the probate court's possession of a *res*).

[23] The Orphans' Court lacks jurisdiction to decide questions of title to personal property. *Libonati v. Ransom*, 664 F. Supp. 2d 519, 524-25 (D. Md. 2009) (Orphans' Court lacked jurisdiction to resolve "claim . . . that the assets belonging to the decedent were wrongfully transferred by the decedent's attorney-in-fact to herself," because the "claim turns on the issue of who has title to the assets") (*citing DeFelice v. Riggs Nat. Bank of Washington*, 55 Md. App. 476, 479, 462 A.2d 88, 90 (1983)).

[24] In their opposition to the amended complaint, the defendants identify two allegations that they argue are within the probate exception. *See* ECF No. 42 at 8-9. First, Neal alleges that Bryan and Phillip misappropriated trust assets and otherwise breached the trust by the Secret Settlement. *See* ECF No. 32-2 ¶ 25. This allegation does not fall within the probate exception for the reasons discussed. Second, Neal alleges that "the existence and/or sale proceeds from [Thankful Acres and the marital home] are absent from" Estate filings submitted by Bryan to the Orphans' Court during the Estate administration. *See id.* ¶ 24. Because the amended complaint's claims challenge the alleged misappropriation of these funds--not the Estate administration--it is not within the probate exception. *See, e.g., id.* at 25. However, the defendants may renew their

interference with an expected inheritance claim did not fall within probate exception; claim sought "an *in personam* judgment against [the defendant], not the probate or annulment of a will"); *Oliver*, 943 F. Supp. 2d at 638-39 (probate exception does not apply to *inter vivos* trusts even when the trust "serve[s] as the functional equivalent of a will"); *Stiles v. Whalen*, 13 C 3516, 2013 WL 6730797, at *3-*4 (N.D. Ill. Dec. 20, 2013) (*in personam* claims asserting breach of fiduciary duty to the trusts that sought an accounting and damages from the trustee personally did not fall within the probate exception).[25]

---

objections if--in later stages of the litigation--Neal claims entitlement to relief that would disturb the administration of the Estate. *See Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (*in personam* claims seeking relief that would disturb the estate are barred by the probate exception).

[25] *See also Beattie v. J.M. Tull Found.*, 941 F. Supp. 57, 59 (D.S.C. 1996) ("Because the trust is a testamentary trust, it may be tangentially related to administration of the estate. However, simply because the trust was funded with estate assets and established by the terms of a will, the administration of the trust does not necessarily equal the administration of the estate."); *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 848-49 (6th Cir. 2006) ("Trusts as a general matter have historically been subject to federal jurisdiction, and '[m]any, if not most, courts have held that the probate exception does not apply to actions involving trusts.'") (*quoting Sianis v. Jensen*, 294 F.3d 994, 999 (8th Cir. 2002)); *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 530-34 (S.D.N.Y. 2010) (claim asserting improper termination of trust did not fall within probate exception: "[r]equests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it [] was not part of the estate at the time of the decedent's death").

2. *Rooker-Feldman*

In their motion to dismiss the original complaint, the defendants argue that Neal's claims are barred by the *Rooker-Feldman* doctrine, because "his claims are inextricably intertwined with the probate court judgments." ECF No. 24-1 at 15-16.  In their opposition to the amended complaint, the defendants incorporate their motion to dismiss arguments but do not explain why the amended complaint fails to cure the alleged *Rooker-Feldman* problems.  *See* ECF No. 42 at 13.

The *Rooker-Feldman* doctrine bars a "'party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'"  *Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) (*quoting Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S. Ct. 2647, 2654, 129 L. Ed. 2d 775 (1994)).  The doctrine applies when: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of "injuries caused by state-court judgments;" (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff "invit[es] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 288-89 (4th Cir. 2013).  The doctrine applies to "matters directly addressed to

18

the state court" and "claims which are 'inextricably intertwined' with state court decisions." *Smalley*, 526 F. App'x at 236 (internal quotations omitted); *see also Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 717-19 (4th Cir. 2006) (*Rooker-Feldman* applies regardless of whether "the state-court loser [argued] to the state court the basis of recovery that he asserts in the federal district court.").

In his amended complaint, Neal has removed the allegations identified by the defendants that allegedly violated *Rooker-Feldman*. He no longer challenges the valuations of Estate properties, or the reimbursement of Bryan and Phillip for life insurance premium payments, both of which were approved by the Orphans' Court. *See* ECF No. 24-1 at 16. Instead, he asserts claims arising out of Bryan's and Phillip's alleged mismanagement of the Trusts, which Neal did not challenge during the probate court proceedings.[26]  Resolution of Neal's claims are

---

[26] *See* ECF No. 1 ¶ 27 (noting that the only beneficiary to file exceptions in the Orphans' Court was Andrea).  Nor could Neal have challenged Bryan's and Phillip's management of the Trusts in the Orphans' Court. In Maryland, the Orphans' Courts "are courts of special and limited jurisdiction" and "cannot . . . exercise jurisdiction not expressly conferred by law." *DeFelice*, 55 Md. App. at 478.  Such jurisdiction does not include trusts or trust administration. *See* Md. Code Ann., Est. & Trusts § 2-102 (West 1994); *McIntyre v. Smyth*, 159 Md. App. 19, 41, 857 A.2d 1235, 1247 (2004); *Zimmerman v. Coblentz*, 170 Md. 468, 185 A. 342, 345 (1936) ("'[T]he orphans' court has no jurisdiction of the administration of a trust created by a will.'").

not inextricably intertwined with the issues decided by the state court, because his success does not "depend[] upon a determination that the state court wrongly decided the issues before it." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (internal quotations omitted). Accordingly, because Neal seeks redress for the defendants' actions in managing the trusts--and not "redress for an injury allegedly caused by the state court's decision itself"--*Rooker-Feldman* does not bar his claims. *See Davani*, 434 F.3d at 718-19.[27]

### D. Affirmative Defenses

#### 1. Statute of Limitations / Laches

The defendants argue that many of Neal's allegations--those that refer to events that occurred before July 9, 2010--are barred by Maryland's three-year statute of limitations. *See* ECF Nos. 24-1 at 18-19, 42 at 5-8. Neal contends that--under the "discovery rule"--the statute of limitations did not begin to run until he received--in November 2012--the Summary of Account,

_____

[27] *See also, e.g., Young v. Bishop Estate*, 497 F. App'x 735, 737 (9th Cir. 2012) (although negligence "claim arises out of the same set of underlying facts that are the subject of ongoing probate proceedings in the Hawaii courts," it was not barred by *Rooker-Feldman* because "it does not seek relief from a state court judgment."); *Thompson v. Waukesha State Bank*, 510 F. Supp. 2d 453, 458 (N.D. Ill. 2007) (*Rooker-Feldman* did not bar claim seeking revocation of a trust when plaintiff was seeking "a determination of his rights under [the trust] agreement" and the probate court judgment "[a]t most . . . determined that entering into the trust was in plaintiff's best interest").

because that is when he learned "that the Defendants were in violation of the Trusts." *See* ECF No. 46 at 3.  He also argues that, under Maryland law, a Trustee cannot "assert a defense of limitations when there has been no express repudiation of the trust by the trustee." ECF No. 31-1 at 10.  The defendants respond that the complaint "alleges several acts of 'repudiation' by the Trustees." *See* ECF No. 38 at 6-7.

In Maryland, a litigant has three years from the date it accrues to file a civil action.  Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2014).[28]  To determine when a cause of action "accrues," Maryland follows the "discovery rule." *Bank of New York v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004). Under that rule, the limitation period begins when "the plaintiff has knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable diligence,

---

[28] Section 5-101 "is not *per se* applicable to actions in equity," because "[e]quity applies the doctrine of laches, which normally requires that the defendant show some prejudice in addition to and as a result of the delay in bringing the action." *Villarreal v. Glacken*, 63 Md. App. 114, 127, 492 A.2d 328, 335 (1985). However, when there is an analogous action at law, "a court of equity will apply the statute of limitations applicable to that analogous legal action," and will bar the equity action "by the mere lapse of time, without the necessity for a showing of prejudice." *Id.* at 127-28.  Accordingly, Maryland courts have applied the three-year statutory limitations period to equitable claims involving trusts. *See id.*; *Juliano v. Juliano*, 36 Md. App. 1, 11-13, 372 A.2d 1084, 1090-91 (1977) (applying three-year limitations period in action to recover trust property).

would have led to knowledge of the alleged tort."[29]   *Pennwalt*

*Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1163 (1988)

(internal quotations and punctuation omitted).

In the case of express and continuing trusts, the statute

of limitations generally "does not apply . . . until the trustee

openly repudiates the trust, adversely claims against the

beneficiary or recognizes someone else as beneficiary," and "the

cestui knows of such conduct, or could have learned of it by the

use of reasonable diligence."   *Villarreal*, 63 Md. App. at 129;

*Ridgely v. Pfingstag,* 188 Md. 209, 235, 50 A.2d 578 (1946).

Acts of repudiation by a trustee include "declin[ing] to account

to the cestui, tak[ing] trust income for his own purposes, or

set[ting] himself up as the owner of the trust capital."

*Ridgely*, 188 Md. at 235.

Under Federal Rule of Civil Procedure 8(c), the statute of

limitations is an affirmative defense to be raised in the

pleadings, "and is not usually an appropriate ground for

dismissal."   *Gray v. Metts*, 203 F. Supp. 2d 426, 428 (D. Md.

2002).   However, dismissal under Rule 12(b)(6) on statute of

---

[29] In other words, the discovery rule applies "when the plaintiff knows or reasonably should have known of the wrong," even if the plaintiff is unaware of the "extent of the harm, the source, or other intimate details of the tort."   *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) *aff'd*, 495 F. App'x 350 (4th Cir. 2012) (*citing Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 749 A.2d 796, 801 (2000)); *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095, 1104 (2004)) (internal quotations omitted).

limitations grounds is nonetheless appropriate "when the face of
the complaint clearly reveals the existence of a meritorious
affirmative defense." *Id.*; *Goodman v. Praxair, Inc.*, 494 F.3d
458, 464 (4th Cir. 2007) (Rule 12(b)(6) dismissal on statute of
limitations grounds may occur in the "relatively rare
circumstances" when "all facts necessary to the affirmative
defense clearly appear *on the face of the complaint*") (emphasis
in original) (internal quotations and punctuation omitted).  The
defendant has the burden of establishing the affirmative defense
of limitations.  *Goodman*, 494 F.3d at 464 (*citing Newell v.
Richards,* 323 Md. 717, 594 A.2d 1152, 1156 (1991)).

The amended complaint alleges several acts of repudiation
by Bryan and Phillip, including failure to provide an accounting
when requested and, in many transactions, taking of trust income
for personal purposes.  *See, e.g.*, ECF No. 32-2 ¶¶ 18, 41-42.
However, it is not clear from the face of the amended complaint
when Neal knew--or should have known--about these acts of
repudiation or the other alleged breaches of Trust that occurred
subsequently, thereby triggering the limitations period.  Neal
alleges that he did not become actually aware of the violations
until he received the Summary of Account in 2012.  *See* ECF Nos.
31-1 at 9, 32-2 ¶ 46.  Also, he alleges that he did not request
an accounting until August 17, 2010--within the three year

limitations period.[30]   ECF No. 32-2 ¶ 42.   Accordingly, because

the facts alleged do not clearly indicate that Neal reasonably

should have discovered the breaches before July 9, 2010,

dismissal on statute of limitations grounds is inappropriate.[31]

---

[30] In the original complaint, Neal alleged that he--and his
attorney--unsuccessfully requested an accounting before the
final Estate administration.  *See* ECF No. 1 ¶¶ 43, 89.  In a
footnote of the reply brief for the motion to dismiss, the
defendants argue that this constitutes a binding judicial
admission that Neal had knowledge of the defendants' repudiation
of the trust, thereby triggering the statute of limitations.
*See* ECF No. 38 n.9.  These allegations have been removed in the
amended complaint.  It is unclear from the original complaint,
which--if any--of these early requests were for an accounting of
the Trusts specifically, rather than the Estate generally.  *Cf*.
ECF No. 40-1 at 8.  Also, in the amended complaint, Neal alleges
that Bryan told Neal that he was not entitled to an accounting
but promised to provide one anyway.  *See* ECF No. 32-2 ¶ 42.  The
Court will defer consideration of whether the statute of
limitations was triggered by Neal's or his attorney's requests
during the Estate administration until the factual record is
developed further at summary judgment.

[31] The defendants also argue that Neal should have known about
the challenged real estate transactions, because he discovered
them in public land records which were available more than three
years from when the complaint is filed.  *See* ECF No. 38 at 8-9.
Neal argues that it is unreasonable to require a beneficiary to
search public records for breaches by the trustees before he is
aware of potential mismanagement.  *See* ECF No. 40-1 at 9.  Neal
alleges that he was not aware of the potential breaches until
2012, that he is unsophisticated, and that his attorney brothers
are highly experienced in trust management and real estate
transactions.  *See* ECF No. 32-2 ¶¶ 6-7, 46, 55.  From the record
currently before it, the Court cannot determine as a matter of
law that Neal should have had notice of the alleged breaches
before he received the Summary of Account.  *Cf. Pilz v.
F.D.I.C.*, 117 F.3d 1414 (4th Cir. 1997) ("Even when plaintiffs
have some reason to suspect they may have a claim, Maryland
courts have been unwilling to resolve the notice issue as a
matter of law, especially when a plaintiff has relied on the

*See, e.g.*, *Goodman*, 494 F.3d at 464-66 (reversing dismissal of Maryland breach of contract claim on statute of limitations grounds, because the complaint did not reveal the date of breach or the date plaintiff should have discovered the breach under the discovery rule); *see also Doe v. Archdiocese of Washington*, 114 Md. App. 169, 689 A.2d 634, 639 (1997) ("When the viability of a statute of limitations defense hinges on a question of fact . . . the factual question is ordinarily resolved by the jury, rather than by the court.").

### 2. Res Judicata

In their opposition to Neal's proposed amendment, the defendants incorporate--but do not elaborate upon--their argument from their motion to dismiss that *res judicata* bars litigation of Neal's claims.[32]   *See* ECF No. 42 at 3.   The motion to dismiss argues that Neal cannot challenge the Orphans' Court orders "approv[ing] . . . the Administration Accounts . . . , the payment of expenses, legal fees and commissions, and the payment of . . . life insurance premiums [to] Bryan and Phillip."   ECF No. 24-1 at 18.

---

defendant's or some other skilled person's assurances that there was no problem.").

[32] Although the defendants characterize their *res judicata* arguments as jurisdictional, "[p]reclusion . . . is not a jurisdictional matter."   *Exxon*, 544 U.S. at 293 (*citing* Fed. R. Civ. Proc. 8(c)).

In Maryland,[33] *res judicata* bars relitigation of a claim if:
"(1) the parties in the present litigation are . . . the parties
to the earlier litigation; (2) the claim presented in the
current action is identical to that determined or that which
could have been raised and determined in the prior litigation;
and (3) there was a final judgment on the merits in the prior
litigation." *R & D 2001, LLC v. Rice*, 402 Md. 648, 663, 938
A.2d 839, 848 (2008) (internal quotations omitted). The
affirmative defense of *res judicata* may be raised in a Rule
12(b)(6) motion "only if it clearly appears on the face of the
complaint." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*,
4 F.3d 244, 250 (4th Cir. 1993). However, in considering the
motion to dismiss, "a court may take judicial notice of facts
from a prior judicial proceeding when the res judicata defense
raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d
521, 524 n.1 (4th Cir. 2000). The defendant has the burden of
establishing the affirmative defense of *res judicata*.
*Nationwide Mut. Ins. Co. v. Welker*, 792 F. Supp. 433, 436 (D.
Md. 1992).

In the amended complaint, Neal has removed all allegations
and claims challenging the Orphans' Court orders identified by

---

[33] The law of the state in which a prior judgment was rendered
determines whether that judgment is given preclusive effect. *In
re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)
(*citing* 28 U.S.C. § 1738).

the defendants.  The defendants have not argued or shown that
Neal did raise--or could have raised--in the Orphans' Court, the
claims he raises in the amended complaint, nor is this apparent
on the face of the amended complaint.[34]  Because the defendants
have failed to show that *res judicata* bars the complaint as a
matter of law at this stage, dismissal on this ground is
inappropriate.[35]  *Welker*, 792 F. Supp. at 436.

    E. Sufficiency of Allegations

        1. Breach of Trust Counts

    The defendants argue that Neal's allegations in counts two
and three are merely "bare legal conclusions" that fail to
"state a cause of action" with sufficient specificity.  *See* ECF
No. 42 at 12-13.  Neal argues that the defendants' argument
"ignores the obvious specificity" with which the amended
complaint "is pled."  ECF No. 46 at 7.

    To state a claim for breach of trust, a beneficiary must
plead facts showing "the existence of a trust duty, the failure
of the trustee to perform it and that consequently the court
should grant the requested remedy."  *Madden v. Mercantile-Safe
Deposit & Trust Co.*, 27 Md. App. 17, 32, 339 A.2d 340, 350

---

[34] *See also supra* notes 23, 26.

[35] *See, e.g.*, *Theune v. U.S. Bank, N.A.*, CIV.A. MJG-13-1015, 2013
WL 5934114, at *4 (D. Md. Nov. 1, 2013) (deferring consideration
of *res judicata* defense to summary judgment stage because facts
supporting defense did not appear on face of the complaint
(*citing Forst*, 4 F.3d at 250).

(1975); *Soper v. Maurer*, CIV.A. AW-07-1602, 2010 WL 457546, at
*2 (D. Md. Feb. 2, 2010).

Neal has alleged that Bryan and Phillip are trustees of
specified trusts of which he is a beneficiary. *See, e.g.*, ECF
No. 32-2 ¶¶ 6-7, 12. He has also alleged that Bryan and Phillip
have violated their trust duties in various ways.[36] *See, e.g.*,
*id.* ¶¶ 15, 30-37. For example, he has alleged that Bryan and
Phillip misappropriated trust assets in several specified
transactions for their personal gain and took assets out-of-
trust. *See id.* ¶¶ 47-48, 58, 61. He has identified various
provisions of the Trusts that Bryan and Phillip have allegedly
violated through their actions, including prohibitions on self-
dealing and personally profiting from the trust at the expense
of the beneficiary. *See, e.g., id.* ¶ 15. Finally, he alleges
that Bryan's and Phillip's breaches have deprived him of "his
rightful share of the Trusts' assets." *See id.* ¶¶ 58(C), 70.

---

[36] The defendants argue that count three fails, because Phillip
cannot be liable for failing to redress Bryan's breaches of
trust. *See* ECF No. 42 at 13. However, Neal has alleged that
Phillip is the trustee for the Neal trusts and directly breached
those trusts by, *inter alia*, misappropriating trust property and
abdicating trust administration duties to Bryan. *See, e.g.*, ECF
No. 32-2 ¶¶ 7, 30-31, 39. Accordingly, Neal has sufficiently
alleged that Phillip himself committed breaches of the Trusts.

These allegations--taken as true--are sufficient to state a claim for breach of trust.[37]

    2. Conversion

The defendants argue that Neal "does not . . . allege that Bryan or Phillip have converted from his possession [any] *tangible personal* property." ECF No. 42 at 15. Neal contends that the complaint alleges conversion of the tangible personal property in the Schedule and "monies that are 'specific segregated or identifiable funds.'" *See* ECF No. 46 at 8.

In Maryland, conversion is an intentional tort that occurs when a person exerts "ownership or dominion" over the personal property of another in denial of--or inconsistently with--the rights of the owner. *Darcars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 261, 841 A.2d 828, 835 (2004) (internal citations omitted). To be liable for conversion, a person must have "inten[ded] to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414, 494 A.2d 200, 208 (1985). But "the intent that must be shown does not necessarily involve an improper motive." *Id.* To recover,

---

[37] *See Madden*, 27 Md. App. at 33 (noting that to "challenge[] the conduct of a trustee," the beneficiary "must first allege that the trustee has a duty and has been derelict in the performance of this duty"); *Twombly*, 550 U.S. at 563 ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

the plaintiff "must either have been in actual possession or have had the right to *immediate* possession" of the converted asset. *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 64, 502 A.2d 1057 (1986) (emphasis in original).

The Schedule lists several items of tangible property that allegedly "comprise the corpus of the Trusts" and which "remain unaccounted for by the Defendants." *See* ECF No. 1-10; 32-2 ¶ 38.  Neal alleges that "the property . . . of the trusts, real and personal, identified herein, . . . should have been transferred to or for the benefit of Plaintiff and his trusts." ECF No. 32-2 ¶ 68.  Viewed in the light most favorable to Neal, the amended complaint alleges that Neal was entitled to immediate possession of at least some of the personal property identified on the Schedule when Bryan and Phillip "wrongfully . . . transfer[red it] out-of-trust . . . to themselves." *See id*. Thus, Neal has stated a conversion claim.[38]

3. Removal of Trustee

Under Md. Code Ann., Est. & Trusts § 15-112 (West 2005), if "it is judicially determined that [the trustees] have violated a fiduciary duty then the court must consider whether removal is

---

[38] As the defendants correctly note, however, Neal cannot establish a conversion claim as to intangible rights, unless the defendants converted tangible documents evidencing those interests. *See Sharma v. OneWest Bank, FSB*, CIV.A. DKC 11-0834, 2011 WL 5167762, at *5-*6 (D. Md. Oct. 28, 2011) (defendant failed to state a conversion claim as to intangible rights to recover rental income).

an appropriate remedy." *Jacob v. Davis*, 128 Md. App. 433, 467,
738 A.2d 904, 922 (1999) (noting that the facts alleged showed
that the trustees "failed to perform their fiduciary duty by
refusing to account, and may have committed other violations").
The Court must remove a trustee who has:

> (i) Willfully misrepresented material facts leading to
> his appointment or to other action by the court in
> reference to the fiduciary estate;
> (ii) Willfully disregarded an order of court;
> (iii) Shown himself incapable, with or without fault
> to properly perform the duties of his office; or
> (iv) Breached his duty of good faith or loyalty in the
> management of property of the fiduciary estate.

§ 15-112(a)(1); *Shipley v. Crouse*, 279 Md. 613, 626, 370 A.2d
97, 104 (1977); *Miller v. Rosewick Rd. Dev., LLC*, 214 Md. App.
275, 295, 76 A.3d 422, 433 *cert. denied,* 436 Md. 329, 81 A.3d
459 (2013).  The Court has discretion to remove a trustee who
has:

> (i) Negligently failed to file a bond within the time
> required by rule or order of court;
> (ii) Negligently failed to obey an order of court; or
> (iii) Failed to perform any of his duties as
> fiduciary, or to competently administer the fiduciary
> estate.

§ 15-112(a)(2); *Shipley*, 279 Md. at 626; *Miller*, 214 Md. App. at
295.

Neal has alleged that Bryan and Phillip have committed
various violations of their fiduciary duties, including, *inter
alia*, failing to provide a proper accounting and
misappropriating trust assets. *See supra* Section II.E.1; *e.g.*,

31

ECF No. 32-2 ¶¶ 43, 46.  If these violations are proven, the
Court must, under § 15-112, decide whether to remove Bryan and
Phillip as trustees.  *See Jacob*, 128 Md. App. at 467.  Thus, the
amendment of count seven is not futile.

### 4. Accounting and Constructive Trust Counts

The defendants argue that Neal's accounting and
constructive trust counts should be dismissed, because they are
not independent causes of action, and because he has already
been provided with an accounting of the information which he is
entitled to know.  *See* ECF No. 42 at 10-14.  Neal argues that
the purported accountings he has received are insufficient, and
that--even if there is no cause of action for an accounting in
Maryland--the Court has "equitable power to order the Defendants
to provide a proper one."  *See* ECF Nos. 40-1 at 7, 46 at 5.
Neal does not respond to the defendants' constructive trust
arguments.

### a. Accounting

A trustee has a duty to beneficiaries "to keep clear and
accurate accounts" of the administration of the trust, and to
"render an accounting when called on to do so at reasonable
times by the beneficiaries."  *See Jacob*, 128 Md. App. at 447-
48.[39]  Although an accounting is generally considered a remedy--

---

[39] *See also* Md. Code Ann., Est. & Trusts § 14-405(j) (West 1995).

not a cause of action--in Maryland, a plaintiff may assert an independent claim for an accounting if "'one party is under obligation to pay money to another based on facts and records that are known and kept exclusively by the party to whom the obligation is owed, or where there is a fiduciary relationship between the parties . . . .'"  *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 365-66, 36 A.3d 399, 418 (2012); *Goldstein v. F.D.I.C.*, CIV.A. ELH-11-1604, 2012 WL 1819284, at *13-*14 (D. Md. May 16, 2012).

Here, Neal has alleged a fiduciary relationship, because he has alleged that he is the beneficiary of trusts for which Bryan and Phillip serve as trustees.  *See* ECF No. 32-2 ¶¶ 6-7.[40]  He has alleged that Bryan and Phillip have failed to provide him a complete and accurate account of all the Trusts of which he is a beneficiary.  *See, e.g., id.* ¶ 50.  Accordingly, he has stated an accounting claim.[41]

---

[40] *See, e.g., Hastings v. PNC Bank, NA*, 429 Md. 5, 25, 54 A.3d 714, 725 (2012) (discussing the fiduciary duties owed by a trustee to a beneficiary).

[41] However, as the function of an accounting claim is "access to information," discovery may render this claim "superfluous." *Goldstein*, 2012 WL 1819284, at *14 ("[W]hen a plaintiff properly pleads another cause of action that will entitle the plaintiff to discovery, the remedy of accounting is generally superfluous."); *Alts. Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 510-11, 843 A.2d 252, 307-08 (2004).

b. Constructive Trust

A constructive trust is an equitable remedy "to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254, 1258 (1980). The remedy is applied when "property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it." *Id*. Its purpose is "to prevent the unjust enrichment of the holder of the property." *Id.*; *see also Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 268, 918 A.2d 565, 569 (2007) ("'[A] constructive trust [may] be imposed to avoid unjust enrichment arising out of . . . the violation of any fiduciary duty or any other wrongdoing.'") (*quoting Bailiff v. Woolman*, 169 Md. App. 646, 654, 906 A.2d 409, 414 (2006)). Although a constructive trust is "not a cause of action in and of itself," *Lyon v. Campbell*, 33 F. App'x 659, 663 (4th Cir. 2002), "Maryland courts have analyzed a plaintiff's constructive trust claim without acknowledging any other cause of action raised by the plaintiff," *Korangy v. Mobil Oil Corp.*, 84 F. Supp. 2d 660, 667-68 (D. Md. 2000) (*citing*, *inter alia*, *Wimmer*, 287 Md. at 668; *Starleper v. Hamilton*, 106 Md. App. 632, 666 A.2d 867 (1995)).

In his constructive trust count, Neal alleges that Bryan and Phillip "have been unjustly enriched by their conversion of [trust] properties and funds to their own benefit." ECF No. 32-2 ¶ 65.  Under Maryland law, unjust enrichment requires: (1) a benefit conferred on the defendant by the plaintiff; (2) a defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value.  *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 295, 936 A.2d 343, 351 (2007).

Neal has alleged that Bryan and Phillip--who are both attorneys--have violated the Trusts and enriched themselves by taking trust property for their own personal use at the expense of Neal, an unsophisticated beneficiary of the Trusts.  *See, e.g.,* ECF No. 32-2 ¶¶ 28, 44, 46-47.  These allegations are sufficient to state a claim for a constructive trust to remedy the alleged unjust enrichment.[42]  The Court will permit amendment of count four.

---

[42] *See, e.g., Levin v. Levin,* 43 Md. App. 380, 390, 405 A.2d 770, 777-78 (1979) (imposing constructive trust to prevent unjust enrichment when president of corporation took corporate funds for personal gain in breach of his fiduciary duties); *J.J. Crewe & Son, Inc. Profit Sharing Plan v. Orye,* CIV.A. RDB-11-2924, 2012 WL 2339740, at *3-*4 (D. Md. June 19, 2012) (denying motion to dismiss constructive trust claim when plaintiff sufficiently alleged unjust enrichment).

5. Unjust Enrichment Against Diane

The defendants argue that Neal has failed to state an unjust enrichment claim against Diane, because Neal has not alleged sufficient facts to demonstrate that Diane was unjustly enriched by her husband's alleged wrongdoing. *See* ECF No. 42 at 17-18.

Neal has alleged that the "assets improperly and unlawfully taken/converted" by Bryan and Phillip "have also benefitted . . . Diane," Phillip's wife. ECF No. 32-2 ¶¶ 9, 73. Throughout the complaint, Neal has specifically identified the trust assets--of which Diane has also allegedly been a "recipient"-- that Bryan and Phillip have allegedly taken in breach of their fiduciary duties. *See, e.g.*, *id.* ¶¶ 9, 30-37, 46-48. Neal has not alleged that Diane committed any wrongdoing, or was aware that she was benefitted at Neal's expense or by her husband's wrongdoing. However, "a plaintiff [can] recover [in unjust enrichment] from even an innocent transferee who was without knowledge that he possessed the plaintiff's money." *Gibbons*, 173 Md. App. at 273 (plaintiff could recover in unjust enrichment against innocent spouse who was unaware that her husband had stolen some of the funds in their joint bank account) (*quoting Plitt v. Greenberg*, 242 Md. 359, 364, 219 A.2d 237, 241 (1966) (internal quotations omitted)). Accordingly, Neal's allegations--taken as true and viewed in the light most

36

favorable to Neal--state a claim for unjust enrichment against Diane.  His motion for leave to amend count six will be granted.

III. Conclusion

For the reasons stated above, the motion for leave to amend will be granted, the motion to dismiss will be denied as moot, and leave will be granted to file a surreply.


_____8/13/14_____
Date

_____
William D. Quarles, Jr.
United States District Judge