IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NEAL A. POTTS | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: 1:13-CV-1986-WDQ |
| BRYAN H. POTTS ET AL., | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

On April 30, 2015, pursuant to 28 U.S.C. 636 and Local Rule 301, Judge Quarles, referred this case to me for a Report and Recommendation regarding Plaintiff Neal A. Potts' ("Plaintiff" or "Neal") Motion to Compel Defendant Trustees to Distribute Trust Assets to Plaintiff for his Litigation Related Costs Pursuant to This Court's Superintending Powers ("Motion to Compel"). (ECF Nos. 85 & 91). The Court has reviewed Plaintiff's Motion, related memoranda, supplemental briefing and applicable law. For the reasons presented below, I recommend that Plaintiff's Motion to Compel be DENIED without prejudice for lack of federal jurisdiction.

**I.     BACKGROUND**

This case arises from the establishment of trusts created by the parents of Neal, Bryan Potts ("Bryan"), Andrea Potts[1] and Phillip Potts ("Phillip") to benefit their four children (collectively, the "Trusts"), for which Bryan and/or Phillip serve as trustees.[2] (ECF No. 52 at ¶¶

---

[1] Andrea Potts is not named as a Defendant in this suit.
[2] These trusts include: (1) the Frieda Potts Residuary Trust; (2) the November 29, 1990 Frieda Potts Survivorship Insurance Deed of Trust; (3) the November 16, 1993 Revocable Deed of Trust of Bernard Potts; and (4) the Neal Potts Trust and the Neal Potts Skip Trust ("Neal Trusts"). (*See* ECF No. 32-2 ¶¶ 11, 36 & 43). The allegations Neal

4, 6-7). Upon the death of their parents, the assets of the various trusts "were to be divided into [four] shares equally" between the four Potts children. (*Id.* at ¶ 12). Neal's share was placed into the Neal Potts Trust and the Neal Potts Skip Trusts ("the Neal Trusts"). (ECF No. 52 at ¶ 12). On November 30, 2007, acting as Personal Representative, Bryan opened an Estate in the Orphan's Court. (*Id.* at ¶ 23). In 2009, Bryan and Phillip executed a "confidential settlement agreement" with their sister Andrea that distributed a cash payment of $1,250,000 to Andrea. (*Id.* at ¶ 25). Neal alleges that Bryan and Phillip knew they lacked the authority to terminate Andrea's trust, that the disbursement was considerably larger than his share, and that the distribution violated the terms of the Trusts and the brothers' fiduciary duties to Neal. (*Id.*). On October 30, 2009, Bryan filed a Final Administration of Account which, after accepted by the Orphan's Court, effectively closed the Estate. (*Id.* at ¶ 27). After the closure of the Estate, Neal alleges several instances of self-dealing by Bryan and Phillip in violation of the Trusts including transferring ownership of seven of the eight Trust properties out-of-trust and to themselves, using certain properties as collateral to borrow against, and selling certain properties while failing to account for the proceeds. (*Id.* at ¶¶29-37). After several requests by Neal for an accounting of all the various trusts, he finally received a document entitled "SUMMARY OF ACCOUNT Neal Potts Trust U/A 11/29/90 For Period of 10/30/2009 Through 11/1/2012", which indicated that Bryan—who was not the Trustee of the Neal Trusts "took assets from Plaintiff's trusts for his own personal use and profit at Plaintiff's expense." (*Id.* at ¶ 46). Specifically, the Summary of Account indicated that Bryan had used money from the Neal Trusts to purchase, remodel and sell properties in Baltimore City. (*Id.* at ¶ 47). It also listed several unexplained disbursements including payments to "BMW of Towson." (*Id.*).

---

makes in his Amended Complaint relate in some way to the creation and/or administration of all these Trusts. (*See* ECF No. 52, *generally*).

This case was initiated on July 9, 2013 when Neal sued Bryan and Phillip and Phillip's wife Diane Potts ("Diane") for breach of trust and other state law claims.  Defendants moved to dismiss the claim for failure to state a claim and lack of jurisdiction based on the probate exception.[3]  (ECF No. 24).  In addition to opposing the motion, Neal also moved for leave to file an amended complaint in which he removed the allegations challenging the administration of the Estate in Orphans' Court and instead challenged Bryan's and Phillip's management of the Trusts and alleged misappropriation of trust assets. (ECF No. 32).  In denying Defendant's motion to dismiss for lack of jurisdiction Judge Quarles found that the claims asserted in Neal's Amended Complaint did not fall within the probate exception[4] and thus maintained federal diversity jurisdiction.  (ECF No. 49 at 16).  Accordingly, the claims pending at this time include: Count I – Violations of Trust Instruments and Maryland Law by Trustees/Plaintiff's Fiduciaries Defendants' Concealment and Failure to Provide an Accounting and Information; Count II – Violations of the Trust Instrument and Maryland Law to Set Aside Conveyances or Redress Breach Defendant Bryan H. Potts; Count III – For Violations of the Trust Instrument and Maryland Law to Set Aside Conveyances or Redress Breach Defendant Phillip L. Potts; Count IV – For Violations of the Trust Instrument and Maryland Law Constructive Trust Defendants Bryan H. Potts and Phillip L. Potts; Count V – Conversion Defendants Bryan H. Potts and Phillip L. Potts; Count VI – Unjust Enrichment Defendants Alicia Potts[5] and Diane W. Potts; Count VII – Removal as Trustees Defendants Bryan H. Potts and Phillip L. Potts.  (ECF No. 52).

---

[3] The probate exception bars federal jurisdiction—where it would otherwise apply—when cases seek to probate or annul a will, administer a decedent's estate or seek to dispose of property that is in the custody of the state probate courts.  *Marshall v. Marshall*, 547 U.S. 293 (2006).

[4] Judge Quarles did, however, note that "the defendants may renew their objections if—in later stages of the litigation—Neal claims entitled to relief that would disturb the administration of the Estate."  (ECF No. 49 at n. 24).

[5] Alicia Potts, Bryan's wife was added as a Defendant in the Amended Complaint.

The case has since been proceeding with discovery; the current Scheduling Order sets the fact discovery deadline as July 1, 2015, expert discovery deadline as January 15, 2016 and dispositive pretrial motions deadline as February 1, 2016. (ECF No. 81). On March 19, 2015 Plaintiff filed his Motion to Compel requesting that this Court exercise its "equitable power" pursuant to Md. Code, Est. & Trusts Art., §14.5-201 and "intervene actively in the administration of [his Trusts]" by "distribut[ing] $25,000 to Plaintiff's counsel or the Court's registry…to reimburse Plaintiff's counsel for advanced costs…and immediately replenish Plaintiff's expert's retainer to ensure those expert fees are paid for a considerable time." (*See* ECF No. 85-1; *see also* Md. Code, Est. & Trusts Art., §14.5-201). In further support of his Motion to Compel, Neal cites the distribution standard in the Neal Trusts which he alleges "requires the Trustees to pay Neal such amounts of the principal that are reasonable and necessary for the emergency support, maintenance and health needs of Plaintiff." (*Id.* at 2).

Defendants argue that the Motion to Compel should be denied because: (1) the Court has not and should not assume *in rem* jurisdiction over the Neal Trusts; (2) the instruments creating and governing the Neal Trusts do not permit the trustees to invade the principal to pay Neal's litigation costs; (3) even if Neal was successful in this litigation he is not entitled to legal fees; and (4) previous distributions for other types of legal fees were permitted and do not support the distributions Neal requests now. (ECF No. 87-1). Upon review of the filings I felt that two important issues had not been thoroughly addressed by the Parties and requested supplemental briefing on "whether the Motion is so closely related to the underlying case that this Court should exercise supplemental jurisdiction [and]… whether the probate exception would bar federal jurisdiction over this Motion…" (ECF No. 92). The Parties have both filed supplemental briefing on these issues and the Court is now prepared recommend a ruling.

## II.     ANALYSIS

### A. The Maryland Trust Act—Judicial Proceedings

Sections 14.5-201 et seq. of the Estates and Trusts Article, as added in 2014, effective January 1, 2015, as part of the Maryland Trust Act, provides for judicial proceedings to enforce trusts.  Specifically, it provides that on the invocation of the court's jurisdiction by an interested person, the court may intervene actively in the administration of a trust.  §14.5-201(a).[6]   Neal cites to §14.5-201(d) for the proposition that "this Court may exercise its equitable power over the Trusts created for the benefit of Plaintiff."  (ECF No. 85-1 at 1).  However, it is important to consider that subsection in context.   Section 14.5-201, titled "Court Intervention in Administration of Trust" is the first of three subsections under Subtitle 2—Judicial Proceedings of the Maryland Trust Act and it reads in its entirety:

> **In general**
> (a) On the invocation of the court's jurisdiction by an interested person, on the court's own motion, or as otherwise provided by law, the court may intervene actively in the administration of a trust, fashioning and implementing remedies as the public interest and the interests of the beneficiaries may require.
> **Continuing judicial supervision**
> (b) A trust is not subject to continuing judicial supervision unless ordered by the court.
> **Judicial proceedings involving a trust**
> (c) A judicial proceeding involving a trust may relate to a matter involving the administration of the trust, including a request for instructions and an action to declare rights.
> **General superintending powers of court**
> (d)(1) A court having equity jurisdiction has general superintending power with respect to trusts.
> (2) The provisions of Titles 1 through 13 of this article do not affect or supersede the power described in paragraph (1) of this subsection.

Md. Code Ann., Est. & Trusts § 14.5-201.  The plain language of this subsection creates an independent state law avenue to obtain court intervention in the administration of a trust.  The next section is entitled "Jurisdiction of courts of the State" and reads:

---

[6] There have not been any Maryland state court opinions interpreting or applying these new sections.

> **In general**
> (a) By accepting the trusteeship of a trust having the principal place of administration for the trust in the State or by moving the principal place of administration to the State, the trustee submits personally to the jurisdiction of the courts of the State regarding a matter involving the trust.
> **Interests of beneficiary of trust**
> (b)(1) With respect to the interests of a beneficiary of a trust having the principal place of administration of the trust in the State, the beneficiary is subject to the jurisdiction of the courts of the State regarding a matter involving the trust.
> (2) By accepting a distribution from a trust described in paragraph (1) of this subsection, the recipient submits personally to the jurisdiction of the courts of the State regarding a matter involving the trust.
> **Other methods of obtaining jurisdiction**
> (c) This section does not preclude other methods of obtaining jurisdiction over a trustee, a beneficiary, or any other person receiving property from the trust.

Md. Code Ann., Est. & Trusts § 14.5-202. This subsection creates a "long-arm-type" jurisdiction over out-of-state beneficiaries of Maryland trusts; in other words it permits out-of-state beneficiaries, like Neal, to sue and be sued in Maryland concerning administration of a trust's assets. The final section is entitled "Determination of benefits of beneficiaries" and reads:

> **In general**
> (a)(1) A discretionary power conferred on the trustee to determine the benefits of a beneficiary is subject to judicial control to prevent misinterpretation or abuse of the discretion of the trustee.
> (2) The benefits to which a beneficiary of a discretionary distribution provision is entitled, and what may constitute an abuse of discretion by the trustee, depend on the terms of the discretion, including the proper construction of accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust.
> (3) Notwithstanding the breadth of discretion granted to a trustee by the terms of a trust, including the use of the terms "absolute", "sole", or "uncontrolled", a trustee abuses the discretion of the trustee in exercising or failing to exercise a discretionary power if the trustee:
> (i) Acts dishonestly;
> (ii) Acts with an improper motive, even though not a dishonest motive;
> (iii) Fails to exercise the judgment of the trustee in accordance with the terms and purposes of the trust; or
> (iv) Acts beyond the bounds of reasonable judgment.
> **Review of actions by trustee**
> (b) A court may review an action by a trustee under a support provision or a mandatory distribution provision in the trust.

Md. Code Ann., Est. & Trusts § 14.5-203.  This final subsection limits judicial control of a trustee's discretionary power to instances of misrepresentation or abuse of the discretion of the trustee and provides a framework for evaluating that conduct.

Despite the fact that Neal has titled his motion as a Motion to Compel and filed it in the case pending in this Court, the relief he seeks and the authority he cites render it a separate and distinct request for relief that would require this Court to intervene in various discretionary management decisions concerning the assets of the Neal Trusts, asserting its jurisdiction over the Trusts.  Indeed, as Defendants point out, Sections 14.5-201 et seq. are enabled by Maryland Rule 10-501, which requires the beneficiary to file a petition captioned "In the Matter of…. [stating the name of the fiduciary estate]" and specifying "[t]he reason for seeking the assumption of jurisdiction by the court and a statement of the relief sought, specifying the extent to which court jurisdiction over the fiduciary estate is desired."  Md. R. 10-501.  This procedural requirement further suggests that an *in rem* action seeking judicial intervention over the administration of a trust and appropriateness of a distribution differs from the *in personam* claims for the various breaches of the Trusts, conversion and unjust enrichment Neal claims in this case. Based on the above, Neal's request by way of the instant Motion to Compel for this Court to intervene in the discretionary disbursement of trust assets is a separate and distinct Maryland state law request for relief that would require its own jurisdictional foundation in this Court.

### B.  Federal Jurisdiction

Considering Neal's Motion as an independent action, there are two ways this Court could have jurisdiction over it—diversity or supplemental.  Neal's Motion seeks Court intervention in the administration of his Trusts for the disbursement of $25,000, which plainly doesn't meet the $75,000 amount in controversy requirement for diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).

7

Accordingly, for this Court to have jurisdiction it must exercise supplemental jurisdiction over it as a related claim under 28 U.S.C. § 1367.  Pursuant to 28 U.S.C. § 1367 the Court may only exercise supplemental jurisdiction if the claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367 (a).  The Code further provides that this Court "may decline to exercise supplemental jurisdiction over a claim…if the claim raises a novel or complex issue of state law."  28 U.S.C. § 1367 (b).

Supplemental jurisdiction exists when the relationship between the jurisdiction-invoking claim and the supplemental claim

> permits the conclusion that the entire action before the court comprises but one constitutional "case."… The state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in the federal courts to hear the whole.

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 at 725 (1966).  It is well established that the common nucleus concept encompasses claims that arise from the same "transaction or occurrence" as the jurisdiction-invoking claim.  *See* § 3567.1Grant of Supplemental Jurisdiction in 28 U.S.C.A. § 1367(a), 13D Fed. Prac. & Proc. Juris. § 3567.1 (3d ed.).

Neal's Motion alleges that the Neal Trusts' distribution standards require "the Trustees to pay Neal such amounts of the principal that are reasonable and necessary for the emergency support, maintenance and health needs of Plaintiff" and that the Trustees' failure to do so implicates § 14.5-203.  (ECF No. 85-1 at 2).  He further alleges that the $25,000 disbursement for his litigation costs satisfies this standard and that the refusal to disburse the funds violates the Trusts.  *See id. generally*.  Accordingly, he seeks to invoke this Court's jurisdiction to intervene in the discretionary disbursement decisions concerning his Trusts' assets and compel the

disbursement of the funds. *Id*. Section 14.5-203 of Md. Code Ann., Est. & Trusts provides that "[a] discretionary power conferred on the trustee to determine the benefits of a beneficiary is subject to judicial control to prevent misinterpretation or abuse of the discretion of the trustee." That Section further provides that "[t]he benefits to which a beneficiary of a discretionary distribution provision is entitled, and what may constitute an abuse of discretion by the trustee, depend on the terms of the discretion." *Id.* However, notwithstanding the discretionary terms of the trust, "a trustee abuses his discretion if he acts dishonestly or with improper motive. *Id.* Accordingly, the "transaction or occurrence" giving rise to Neal's Motion was the denial of a discretionary disbursement of Trust funds from the Neal Potts Trust and/or Neal Potts Skip Trust and the "nucleus of operative facts" include the terms of the Trusts' discretion as granted to the trustee, the alleged abuse of that discretion in not disbursing the funds Neal requested, and the application of § 14.5-203.

By contrast, in Neal's underlying (and jurisdictional-invoking) *in personam* claims he alleges various breaches of all the Trusts, conversion and unjust enrichment – all of which occurred prior to the denial of Neal's requested disbursement. Specifically, Count I of Neal's Amended Complaint ("Concealment & Failure to Provide an Accounting and Information") alleges that Defendants "conceal[ed] and fail[ed] to provide Plaintiff with material and necessary information concerning his distribution of its management… [and were thereby] allowed to commit [various] breaches of trust, duty and Maryland law" dating back to 1993. (ECF No. 52 at ¶¶ 53-55). Count II ("To Set Aside Conveyances or Redress Breach") alleges that Defendant Bryan "misappropriate[ed] and/or conceal[ed] trust property, including but not limited to insurance proceeds and/or proceeds from the sale of [properties on] Dinges, Mindfield and Gamber Roads as well as Curley and Jefferson Streets." (*Id.* at ¶¶ 56-58). Count III ("To Set

9

Aside Conveyances or Redress Breach") alleges that Defendant Phillip "select[ed] the most valuable and best performing properties to distribute to himself and Bryan…wrongfully [took] assets out of trust and/or terminating them…distribut[ed] trust shares secretly and in bad faith…misappropriate[ed] and/or conceal[ed] trust property, including but not limited to insurance proceeds and/or proceeds from the sale of [properties on]Dinges, Mindfield and Gamber Roads as well as Curley and Jefferson Streets…allow[ed] Bryan Potts who was not Plaintiff's Trustee to invade the assets of Plaintiff's trusts for his own personal use and profit…" (*Id.* at ¶¶ 59-61). Count IV ("Constructive Trust") alleges that Defendants "breached their duties to administer the trust in accordance with the terms and applicable law, loyalty, impartiality, record keeping… in the ways set forth in [Counts I-III]." (*Id.* at ¶ 63). Count V ("Conversion") alleges that Defendants "wrongfully used their positions as Trustees to transfer, out-of-trust and otherwise, to themselves certain specific, identifiable assets, namely the property and proceeds of the trusts, real and personal [identified in the Complaint], which should have been transferred to or for the benefit of Plaintiff and his trusts." (*Id.* at ¶ 67). Count VI ("Unjust Enrichment") alleges that Bryan and Phillip's wives were unjustly enriched by his brother's conduct. (*Id.* at ¶¶ 73-74). Count VII ("Removal as Trustees") alleges that the above conduct requires the removal of Bryan and Phillip as Trustees of the Neal Trusts. (*Id.* at ¶¶ 75-77). None of the facts or legal theories alleged in support of the Amended Complaint carries over to the present Motion to Compel, which relates only to the Neal Trusts, different Trust provisions, different Maryland law, and requires this Court to wear the hat of a trustee in an *in rem* proceeding.

While I recognize that Neal's theory is that the disbursement was denied in an effort to thwart his underlying claims and that those underlying claims also include allegations of

misfeasance against the Trustees, that is the only factual connection to his Motion.[7] Based on the above I recommend that this Court find that supplemental jurisdiction does not exist because the claims do not share a common nucleus of operative facts.

Even if a sufficient factual overlap existed it is unlikely that the second prong of 28 U.S.C. § 1367 (a) would be met. The procedural disparities (i.e. the pleadings, parties, and case caption) between the causes of action suggest that the invocation of court jurisdiction to intervene in the management of a trust would not ordinarily be expected to be tried together with claims for breaches of duty by the trustees, conversion and unjust enrichment. As Defendants argue Plaintiff's underlying claims deal almost entirely with Defendants' past management of all the Trusts and "by contrast, Plaintiff now asks the Court to prospectively compel Defendants to distribute money from either the Neal Potts Trust or Neal Potts Skip Trusts for Plaintiff's litigation expenses, invoking the provision of the Neal Potts Skip Trust instrument authorizing distributions 'as are reasonable and necessary for the emergency support, maintenance and health needs of Neal Pots and his decedents.'" (ECF No. 95 at 3-4 (internal citations omitted)).

Alternatively, I would recommend that this Court use its discretion and refrain from exercising jurisdiction over this claim. The Code provides that this Court "may decline to exercise supplemental jurisdiction over a claim…if the claim raises a novel or complex issue of state law." 28 U.S.C. § 1367 (b). In particular, where issues of Maryland law have not been resolved by Maryland's courts, this Court will decline supplemental jurisdiction. *See e.g. Sampson v. City of Cambridge, Md.,* No. CIV. WDQ-06-1819, 2008 WL 7514365, at *10 (D.

---

[7] Plaintiff cites *Davidson v. Blaustein*, 247 F. Supp. 225 (D. Md. 1965) for the proposition that "assumption of jurisdiction over the administration of a testamentary trust begins with allegations of mismanagement." (ECF No. 93 at 4). Plaintiff's reliance on that case is, however, misguided. In *Davidson* this Court ultimately held that it did not have jurisdiction to grant discovery by accounting. *Davidson*, 247 F. Supp. At 229. While this Court did cite *Cleveland v. Mercantile Trust Co.*, 45 F. Supp. 205 (D. Md. 1942) in *dicta* for that proposition, Plaintiff's reliance on that case is equally misguided as the *Cleveland* Court dismissed the claims on other grounds and noted that if the case were to be brought again the proper jurisdiction would be the Orphans' Court of Baltimore City.

Md. June 5, 2008) *aff'd sub nom. Sampson v. City of Cambridge, Maryland*, 322 F. App'x 295 (4th Cir. 2009) (declining supplemental jurisdiction over claims alleging violations of the Maryland Confidentiality of Records Act where state courts had not yet addressed the issues); *Green v. Zendrian*, 916 F. Supp. 493, 498 (D. Md. 1996) (finding that because a novel issue of state law before this Court was a complex one involving the interpretation of the Maryland Declaration of Rights, principles of comity counselled against the exercise of supplemental jurisdiction).

> As Defendants emphasize
>
> Under Maryland law, a petition for a court of equity to assume jurisdiction over a trust pursuant to Md. Code, Estates and Trusts Article § 14.5-201 is intended to be brought as a stand-alone proceeding not together with tangentially related claims. This is a unique and specialized area of equity jurisdiction and the Maryland Court of Appeals has established an entire chapter of rules of procedure specifically for this purpose. *See* Maryland Rules 10-501 *et seq.*, incorporating by reference Rules 10-702 through 10-712. Maryland courts of equity are more well equipped to deal with such petitions, because they are more familiar with Maryland trust law, and because they regularly deal with matters arising out of the administration of estates in orphans' courts.

(ECF No. 95 at 7).

As explained above, sections 14.5-201 et seq. of the Estates and Trusts Article became effective January 1st of this year and has not yet been applied or interpreted by any Maryland court. If this Court were to address Neal's Motion it would have no guidance as to how Maryland intended sections 14.5-201 et seq. to be applied (i.e. what degree of misinterpretation or abuse of discretion warrants judicial control of the trust; how the trusts' terms of discretion are to be construed; or what conduct amounts to dishonest or improper motive). Indeed, this is not a case where Maryland courts have had occasion to rule on prior cases in the same or related context. *See e.g. Arrington v. Colleen, Inc.*, No. CIV. AMD 00-191, 2000 WL 34001056, at *3 (D. Md. Aug. 7, 2000).

## III.     CONCLUSION

For the foregoing reasons, I recommend that Plaintiff's Motion to Compel Defendant-Trustees to Distribute Trust Assets to Plaintiff For His Litigation Related Costs Pursuant to This Court's Superintending Powers be DENIED without prejudice for lack of federal jurisdiction.


Date: July 24, 2015                                         /s/
                                                    J. Mark Coulson
                                                    United States Magistrate Judge